UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Christopher Robinson,
     Plaintiff

     v.                                    Civil No. 09-cv-083-SM
                                           Opinion No. 2010 DNH 076
Todd Gordon; Jason Riley;
and Hillsborough County,
     Defendants

**O R D E R**

Plaintiff, Christopher Robinson, is currently an inmate at the New Hampshire State Prison. At all times relevant to this suit, however, he was a pre-trial detainee, held at the Hillsborough County House of Corrections (also known as "Valley Street Jail"). He brings this action seeking compensatory and punitive damages, claiming he was the victim of various common law torts and saying defendants violated his constitutionally protected rights by using excessive force against him during an incident that occurred in March of 2007.

Defendants Todd Gordon, Jason Riley, and Hillsborough County move for summary judgment as to all claims against them. For the reasons set forth below, defendants' motion is granted in part, and denied in part. Gordon is entitled to summary judgment on all claims. Plaintiff's federal claims against the remaining defendants are dismissed, without prejudice. His state common

law claims, however, are remanded to the New Hampshire Superior Court.

**Standard of Review**

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

**Discussion**

I.  State and Federal Claims against Gordon.

Plaintiff does not object to defendant Gordon's motion for summary judgment. See Plaintiff's objection (document no. 26) at para. 12 ("Plaintiff does not object to summary judgment for Gordon.") (emphasis in original). Accordingly, the claims

against Gordon can be disposed of quickly.  Summary judgment shall be entered in Gordon's favor.


II.  <u>Federal Claims against Hillsborough County and Riley</u>.

42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>.

42 U.S.C. § 1997e(a) (emphasis supplied).  The Supreme Court has held that section 1997(e) requires an inmate to exhaust all available administrative processes before filing a federal suit that relates to the conditions of his or her confinement, even if some or all of the relief the inmate seeks cannot be obtained through the available administrative processes.  <u>Booth v. Churner</u>, 532 U.S. 731, 734 (2001) ("The question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money.  We hold that he must.").

Subsequently, the Supreme Court made explicit that which was implicit in <u>Booth</u>: the phrase "with respect to prison conditions," as used in the PLRA's exhaustion provision,

incorporates within its scope not just conditions generally affecting the inmate population, but also discrete incidents affecting only a single individual.

> [T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

Porter v. Nussle, 534 U.S. 516, 532 (2002). And, most recently, the Court held that "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91 (footnote omitted). So, to properly exhaust available administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)).

The Valley Street Jail has adopted an inmate grievance procedure, the details of which are set forth in the Inmate Handbook.

>   Step 1: Informal Resolution - You must make a genuine attempt to seek an informal resolution of your problem with the staff member concerned.
>
>   Step 2: The second step is initiated using the Inmate Request Form format.  Fill out an Inmate Request Form stating your problem and suggested remedy.  Submit the form to your Unit Officer.  Most request forms will be answered within seven (7) working days of receipt.
>
>   Step 3: If you are dissatisfied with the response to your Inmate Request Form, you may file an Inmate Grievance Form.  The Captain or designee has fifteen (15) working days from receipt to review your grievance and reply unless there are extenuating circumstances.

Hillsborough County Department of Corrections Inmate Handbook (document no. 23-3 ) at 20.  According to David Dionne, Assistant Superintendent of the Hillsborough County Department of Corrections, "Request forms and ultimately, grievance forms are available from any staff member, on any date and during any of three shifts of employment.  Should an inmate be unable to obtain a request and/or grievance [form] from one particular officer, there are multiple staff members an inmate would encounter on any given day, from whom he could obtain the required documentation." Affidavit of David Dionne (document no. 23-2)at para. 10.

Plaintiff received a copy of the Inmate Handbook and was familiar with the jail's grievance procedure, having invoked it several times.  See Dionne affidavit at para. 5.  Yet, with regard to the alleged assault in March of 2007, he concedes that

5

he did not file an inmate request form or an inmate grievance form and, therefore, failed to exhaust available prison administrative remedies. See Plaintiff's objection at para. 14. Nevertheless, he asserts that he should be excused from the PLRA's exhaustion requirement, arguing that the grievance process was, at least to him, "unavailable." Specifically, he says that following the alleged assault, he asked Corrections Officer Antilus for a grievance form. But, says plaintiff, Antilus told him he did not need one.

> Question: Did you ever file a grievance?
>
> Answer: I attempted to. I was denied that process.
>
> Q. Who denied that?
>
> A. I believe it was Officer [Antilus].
>
> Q. How did he deny you the ability to file a grievance?
>
> A. He said, You don't need that.
>
> Q. And what did you do?
>
> A. I accepted that.
>
> Q. Why?
>
> A. Because I had seen other circumstances and situations when inmates angered certain correctional officers, what the result of that was. And I was content with accepting no as an answer.
>
> Q. If you had seen prior incidents that prompted you to be afraid to file a grievance why did you even ask for one?

> A.        Because I was hoping that maybe I was getting an officer at the time that might actually give me one.

Plaintiff's deposition (document no. 23-4) at 33-34.

If, as plaintiff suggests, he was hoping to find a corrections officer who "might actually give [him]" an inmate request form or grievance form, he certainly could have (and should have) asked another officer. He did not, suggesting that he was not interested in exhausting available administrative remedies. Of course, it is possible that he was genuinely concerned that his efforts to obtain a request form might anger Riley. But, even if those fears were genuine, plaintiff has failed to point to sufficient evidence to suggest that they were reasonable.

There may well be circumstances under which prison officials might be said to have denied an inmate access to the administrative process by, for example, making a concerted and coordinated effort to refuse him access to required forms or by threatening physical violence should he pursue a grievance. See generally Hemphill v. New York, 380 F.3d 680, 686-88 (2d Cir. 2004); Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005). The situation described by plaintiff, however, is not one of them. Plaintiff was content to let the matter drop, without asking for

a form from another officer, or grieving the alleged denial by Antilus. That was his right. But that choice, on this record, does not come close to excusing his failure to exhaust plainly available administrative remedies.

Having failed to exhaust available administrative remedies, plaintiff cannot pursue his claim that defendants violated his constitutionally protected rights by using excessive force against him (count six). See 42 U.S.C. § 1997e(a). But, because it is unclear whether plaintiff is time-barred (or otherwise precluded) from exhausting those administrative remedies now, the court will dismiss his federal claim without prejudice to his ability to re-file it if, or when, he fully complies with the jail's inmate grievance procedure.

III. State Claims against Hillsborough County and Riley.

Having dismissed plaintiff's federal claim, the court must next determine whether it is appropriate to exercise supplemental jurisdiction over his state law claims. Because plaintiff originally filed this action in state court (defendants removed the case, invoking this court's federal question subject matter jurisdiction), he asks the court to decline to exercise supplemental jurisdiction over those state law claims and remand the case to the state superior court.

As to the five remaining state law claims in plaintiff's complaint, the court declines to exercise its supplemental jurisdiction. See generally 28 U.S.C. § 1367. Section 1367 provides that the court may decline to exercise supplemental jurisdiction over a plaintiff's state law claim when:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) <u>the district court has dismissed all claims over which it has original jurisdiction</u>, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied). To assist district courts, the Court of Appeals for the First Circuit has identified the following additional factors that should be considered when determining whether to exercise supplemental jurisdiction over state law claims: (1) the interests of fairness; (2) judicial economy; (3) convenience; and (4) comity. See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). With regard to principles of fairness and comity, the Supreme Court has observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal

>   claims are dismissed before trial, even though not
>   insubstantial in a jurisdictional sense, the state
>   claims should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (footnote omitted).

Given that the court has dismissed the sole federal claim in plaintiff's complaint, and taking into consideration plaintiff's expressed preference to litigate his state common law claims in state court, the court declines to exercise supplemental jurisdiction over the state law claims in counts one through five of plaintiff's complaint.

## Conclusion

Defendant Gordon is granted summary judgment as to all claims advanced against him in plaintiff's complaint. As to the remaining defendants, plaintiff failed to properly exhaust available administrative remedies prior to filing his federal claim. Accordingly, that federal claim (count six) is dismissed, without prejudice. See 42 U.S.C. § 1997e(a). The court declines to exercise its supplemental jurisdiction over the remaining claims in plaintiff's complaint and the case shall be remanded to state court.

Defendants' motion to amend (document no. 23) is granted, without objection from the plaintiff. Their motion for summary judgment (document no. 20) is granted in part, and denied in part, as discussed above. The Clerk of Court shall remand plaintiff's five state common law claims against Jason Riley and Hillsborough County to the New Hampshire Superior Court, Hillsborough County, Northern District.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 5, 2010

cc: Michael J. Sheehan, Esq.
John A. Curran, Esq.
Elizabeth L. Hurley, Esq.
Jonathan A. Lax, Esq.